In December, 1941, the defendant sold to the plaintiff a sawmill for the sum of $600 to be paid in installments of $20 per month, with the usual mortgage and vendor's privilege to secure the deferred payments, and at the same time the defendant leased to plaintiff a tract of land on which the sawmill was located for the period ending December 31, 1943, at $5 per month.
This suit is to recover damages which plaintiff claims to have sustained by reason of the following summary of facts alleged in his petition: that the defendant had, without his knowledge and consent, gone upon the property sold to him and removed and locked up certain parts of the sawmill machinery after plaintiff had ceased to operate said mill because of financial difficulties; that he had an offer to sell *Page 747 
the mill for $950, but because of the trespass by the defendant and the removal by her of parts of the machinery he could not sell the mill and lost a profit on the sale of $300; that the unlawful trespass by the defendant and removal of said machinery by defendant caused him great mortification, humiliation and loss of time and expense by reason of which he was damaged in the sum of $500; that by reason of the defendant's unlawful act in taking the law into her own hands, defendant should be condemned to pay the further sum of $250 as punitive and exemplary damages.
The defendant admits the sale of the sawmill to the plaintiff and the execution of the lease as alleged, but avers that the plaintiff never made any payment on the contract of sale and lease; that sometime prior to May 26, 1942, the plaintiff wrote to her requesting that she cancel the sale and the lease, and that in compliance with this request she wrote plaintiff cancelling the sale and the lease. The defendant denies that plaintiff suffered any damage.
A judgment was rendered by the trial court in favor of plaintiff for $800, of which amount the sum of $300 was for the alleged loss of profit on the sale of the sawmill, and the sum of $500 for the alleged illegal trespass on the property. From this judgment defendant appealed.
[1] The record shows that plaintiff operated the sawmill for a short time and then, on account of financial difficulties, left the mill and took another job. On June 16, 1942, he wrote defendant stating that he did not see any chance of paying for the mill which he bought from her and offered, "to return the mill to you." The defendant testified that she answered this letter on June 26th (which letter through error was dated 5-26-42), in which she accepted his offer to return the mill and cancel the contract. She offered in evidence a carbon copy of a letter which she says was in answer to his letter of June 16th, in which letter defendant states, among other things, the following: "As per your request the deal is closed, however, it is impossible for me to return the note now as I have it put away for safe keeping and as I am crippled it is quite a hardship for me to make long drives in my car. Keep this letter for your protection just in case anything should happen to me this would prove to my heirs that the deal was closed by me and at your request as you were not able to pay."
Plaintiff testified that he did not receive this letter from the defendant accepting his offer to cancel the contract, although the defendant testified that the letter was addressed and mailed in the usual way. A little over a month after this correspondence, the defendant had a man to remove certain parts of the machinery and place it in the storeroom of a neighbor living near the mill. She says that this was done at the suggestion of a sawmill man in order to keep the machinery from deteriorating and to keep it from being stolen. The record shows that the mill was located in the edge of the woods under a shed, and the plaintiff made no effort whatever to protect the machinery from the weather or from pilferings after he left the mill. The parts of the machinery which had been removed were burned in October, 1942, and subsequently the defendant sold the remainder of the sawmill.
On December 14, 1942, when plaintiff was in default almost a year in his payments and after defendant had removed these parts from the mill and they had been burned, plaintiff wrote defendant stating that as he could not pay for her mill he had written but had received no answer. He then states in this letter:
"So I am writing to you again. My brother-in-law that has the sawmill south of Basile is willing to pay the back notes and keep on paying as I was supposed to pay if you want to sell him the mill on the same condition."
Plaintiff's claim for loss of profits on the sale of the mill is based on an offer which he says was made by his brother-in-law who offered him a sufficient amount to take care of the balance due the defendant. It is obvious from the letter which plaintiff wrote defendant in December, 1942, that he considered the mill as belonging to her and all he wanted was for her to consent for another purchaser to take over his contract and relieve him of any further obligation. He has certainly sustained no loss in profits if defendant's contention that the contract was cancelled is correct, nor has he sustained any loss in this respect if the defendant had complied with his request in his letter of December, 1942. Defendant has judicially declared that the contract was cancelled, so there, is no reason for plaintiff to fear any further liability thereunder, and the plaintiff himself admits in his letter that all he wants is to be relieved of his obligation. *Page 748 
[2] As to the claim for the alleged trespass and removal of part of the machinery, the record shows that the defendant acted in good faith and with the purpose of protecting and preserving the property in which she had an interest, and which property had been practically abandoned by the plaintiff. Regardless of whether or not the plaintiff received defendant's letter accepting his offer to cancel the contract, she had a right to assume that he was no longer interested in carrying out his contract and retaining possession of the property. There was no wilful trespass on her part nor did she undertake to take the law in her own hands. She was acting on defendant's own proposition which she thought she had accepted regardless of whether or not plaintiff received her letter of acceptance.
For the reasons assigned, it is ordered that the judgment appealed from be reversed and set aside, and it is now ordered that plaintiff's suit be dismissed at his cost in both courts.